**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

Dwayne Curtis Littlejohn,

                   Plaintiff,

     v.

Thumbtack, Inc.,

                  Defendant.

Case No. 25-cv-01065-JEP-MCR

## <u>DEFENDANT THUMBTACK INC.'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS</u>

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................1

II.     BACKGROUND AND PROCEDURAL HISTORY ...................................3

    A.    Plaintiff Agreed to Arbitrate All Claims ...............................................4

III.    LEGAL STANDARD ...............................................................10

IV.     ARGUMENT ......................................................................11

    A.    Thumbtack's Terms of Use, Arbitration Clause and Class Action Waiver are Enforceable as a Matter of Law. ..........................12

        1.    Plaintiff Entered into a Valid Agreement to Arbitrate "All Claims."............................................13

        2.    The Agreement to Arbitrate Covers this Dispute. .....................16

    B.    The Parties Agreed that the Arbitrator Has "Exclusive Authority" to Decide "Whether a Claim is Subject to Arbitration."..............................................................17

    C.    This Matter Should Be Stayed Pending the Outcome of Arbitration. .......................................................18

V.      CONCLUSION ...................................................................19

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aquino v. City of Naples*,
  No. 2:25-CV-00460-JLB-NPM, 2025 WL 1568152 (M.D. Fla. June
  3, 2025) ...................................................................................................13

*Attix v. Carrington Mortg. Servs., LLC*,
  35 F.4th 1284 (11th Cir. 2022) ............................................................10, 11, 12

*Babcock v. Neutron Holdings, Inc.*,
  454 F. Supp. 3d 1222 (S.D. Fla. 2020).......................................................... 14, 15

*Bd. of Trs. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup
  Glob. Markets, Inc.*,
  622 F.3d 1335 (11th Cir. 2010).........................................................................17

*Caley v. Gulfstream Aero. Corp.*,
  428 F.3d 1359 (11th Cir. 2005).....................................................................11, 15, 16

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ........................................................................................12

*Hanson v. Experian Info. Sols., Inc.*,
  2024 WL 3509482 (N.D. Ga. July 22, 2024) ......................................................14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) ..........................................................................................11

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ...................................................................................... 10, 12

*Jenkins v. First Am. Cash Advance of Georgia*,
  LLC, 400 F.3d 868 (11th Cir. 2005) ............................................................. 10, 11

*Jones v. Waffle House, Inc.*,
  866 F.3d 1257 (11th Cir. 2017).........................................................................17

*JPay, Inc. v. Kobel*,
  904 F.3d 923 (11th Cir. 2018) ..........................................................................13

*Lambert v. Austin Ind.*,
    544 F.3d 1192 (11th Cir. 2008)...................................................................13

*Maldonado v. Mattress Firm, Inc.*,
    2013 WL 1760272 (M.D. Fla. Apr. 24, 2013)....................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).................................................................................10

*Orellana v. Roblox Corp.*,
    769 F. Supp. 3d 1273 (M.D. Fla. 2025)...........................................................15

*Real Digital Media, LLC v. Bell Microproducts, Inc.*,
    2009 WL 10670943 (M.D. Fla. May 1, 2009)....................................................10

*Reese Turbin, et al. v. Thumbtack, Inc.*,
    No. 25-CV-3388-EMC, 2025 WL 3013972 (N.D. Cal. 2025).........................2, 13

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010)...........................................................................17, 18

*Smith v. Spizziri*,
    601 U.S. 472 (2024).............................................................................11

*Steines v. Westgate Palace, L.L.C.*,
    113 F.4th 1335 (11th Cir. 2024)...............................................................11

*Suarez-Valdez v. Shearson Lehman/Am. Exp., Inc.*,
    858 F.2d 648 (11th Cir. 1988)...................................................................18

*Zatayumi Zulkiply v. Thumbtack, Inc., et al.*
    Supreme Court Case No. 5220582/2025...........................................................3

## Statutes

FAA 9 U.S.C. § 1 ............................................................1, 10, 11, 12, 13

FAA 9 U.S.C. § 2 ................................................................................13

FAA 9 U.S.C. § 3 ........................................................................11, 13, 18

FAA 9 U.S.C. § 4 ................................................................................13

Florida's Deceptive and Unfair Trade Practices Act ..................................................3

## <u>DEFENDANT THUMBTACK INC.'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS</u>

Defendant Thumbtack Inc. ("Thumbtack" or "Defendant"), by and through undersigned counsel, hereby moves this Court, pursuant to Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") for an order compelling Plaintiff Dwayne Curtis Littlejohn ("Plaintiff" or "Littlejohn") to submit his claims to a contractually agreed-upon arbitration process and staying this litigation.[1]

## I.    INTRODUCTION

Plaintiff has agreed to resolve disputes with Defendant Thumbtack in arbitration.  The Complaint, accusing Thumbtack of unfair trade practices and interfering with Plaintiff's business, will ultimately fail on the merits.  But since Plaintiff expressly agreed to resolve disputes in an arbitration forum instead of the courts, this Court's inquiry should be limited to the parties' contractual agreement to arbitrate.  As there is no question of the arbitration provision's scope, meaning, and enforceability, this dispute must be arbitrated.

Thumbtack is a technology company that helps homeowners confidently care for and improve their homes by introducing them to available and qualified service professionals in their geographic area.  Homeowners using Thumbtack get guidance on what to do and when to do it, as well as connections within Thumbtack's community of over 300,000 local service businesses.  In turn, Thumbtack also helps

---

[1] On September 17, 2025, Thumbtack filed its first motion to compel arbitration in this case. Dkt. 7. This Court denied Thumbtack's motion without prejudice. Dkt. 45.

local service professionals ("Pros") connect with customers who are starting new projects. To do so, Thumbtack allows Pros to freely post profiles for customer searches. Thumbtack also allows Pros to purchase leads to homeowners who have expressed an interest in hiring a Pro in the professional's given specialty.

When Pros sign up to work with Thumbtack, they all agree to certain terms of use. The terms of use to which Plaintiff, a Pro, agreed include an unequivocal agreement to arbitrate any disputes. As further explained below, that agreement is a binding and enforceable contract. Thumbtack therefore respectfully invokes its arbitration rights as to Plaintiff.

Notably, since Thumbtack has filed its original Motion to Compel Arbitration in this case, two other courts have entered orders compelling arbitration under the same terms of use at issue in this case. First, in *Reese Turbin, et al. v. Thumbtack, Inc.*, No. 25-CV-3388-EMC, 2025 WL 3013972 (N.D. Cal. 2025), the United States District Court for the Northern District of California granted Thumbtack's motion to compel arbitration. Like Littlejohn, the *Turbin* plaintiffs agreed to arbitrate all disputes when they created their account and when they continued to use Thumbtack's platform pursuant to the November 2022 Terms of Use and its arbitration provision. See *Turbin*, 2025 WL 3013972 at *2–3. The *Turbin* court granted Thumbtack's motion to compel arbitration over the *Turbin* plaintiffs' objections. Notably, the *Turbin* Court declined to rule on arbitrability, finding that the November 2022 TOU "includes an enforceable delegation clause, [so] the question of arbitrability falls to the arbiter, not this Court." *Id.* at *5.

2

Then, on December 11, 2025, a state court in New York also granted Thumbtack's Motion to Compel Arbitration in *Zatayumi Zulkiply v. Thumbtack, Inc., et al.*, Kings County (New York) Supreme Court Case No. 522052/2025. In that order, see Ex. D, which did not include a further written opinion, the court again enforced the November 2022 TOU's Arbitration Provision over the objection of the plaintiff.

This Court must also enforce the arbitration provision in Thumbtack's terms of use and compel arbitration of Littlejohn's claims.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a service professional who has entered into an agreement with Thumbtack to purchase leads for work and have his profiles displayed to homeowners seeking service professionals. *See* Declaration of Ashlee Atkinson ¶¶ 3, 4 ("Atkinson Decl."). Plaintiff brings three causes of action: (I) violation of Florida's Deceptive and Unfair Trade Practices Act; (II) tortious interference with business relationships; and (III) aiding and abetting unlicensed contracting. Plaintiff seeks in excess of $2,000.000.00. Complaint at 3 ("Compl.").

As set forth more fully below, however, when Plaintiff signed up to purchase leads and use Thumbtack's platform, he agreed to be bound by Thumbtack's Terms of Use. At all relevant times, Thumbtack's Terms of Use included an arbitration and class waiver provision. Specifically, Thumbtack and its members agree to arbitrate any disputes that arise out of or relate to the Terms, their relationship with Thumbtack, or their use of the Thumbtack platform.

3

### A.    Plaintiff Agreed to Arbitrate All Claims

Plaintiff opened a Thumbtack account on January 31, 2019. Atkinson Decl.¶ 4.[2]  At that time, the operative Terms of Use had gone into effect in November 2018 ("November 2018 TOU").  Atkinson Decl. ¶ 5.   A full copy of the November 1, 2018 Terms of Use accepted by Littlejohn is attached as **Exhibit A**. Atkinson Decl. ¶ 5.[3]

In order to open an account in January 2019, all Pros (including Littlejohn) had to visit the Pros Sign-Up Page and accept the November 2018 TOU.  Atkinson Decl. ¶ 7.   An image of the Sign-up Page that Plaintiff visited upon signing up is below. Atkinson Decl. ¶ 7-8:

---

[2] Plaintiff also signed up for a Pro account in 2016, but it was largely unused.  He then signed up for a separate account in 2019.  Atkinson Decl. ¶ 4. The second one remains active. *Id.*
[3] All exhibits referenced are attached to the Declaration of Ashlee Atkinson, which Thumbtack filed contemporaneously with its Motion.



Figure 1.  *See* Sign-Up Page for Pros as of 1/31/2019 ("Sign-Up Page"), Ex. C.[4]

On the Sign-Up Page, the text immediately preceding the filled-in blue button states  "By clicking 'Sign up', I agree to the Terms of Use and Privacy Policy."  The words "Terms of Use" and Privacy Policy were hyperlinked in blue. When a Pro clicked on the hyperlinked "Terms of Use," they were taken immediately to a copy of the November 2018 TOU.  Atkinson Decl. ¶ 8.

The Sign-Up Page clearly indicates that by clicking the filled-in blue button and creating his account, Plaintiff agreed to the hyperlinked November 2018 TOU. Successfully signing up for a Thumbtack account requires that users click the filled-in

---

[4] The Sign-Up Page represented in Figure 1 is also attached to the Declaration of Ashlee Atkinson as Exhibit C.

5

blue button that says "Sign up" to complete the sign-up process. Atkinson Decl. ¶ 8. Thus, when Littlejohn created his Thumbtack account, he necessarily agreed to the then-active Terms of Use.

The introductory paragraph of the November 2018 TOU advised in bold font that the terms included an arbitration and class action waiver:

> **IMPORTANT NOTICE: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER. IT AFFECTS YOUR LEGAL RIGHTS AS DETAILED IN THE ARBITRATION AND CLASS ACTION WAIVER SECTION BELOW. PLEASE READ CAREFULLY.**

The blue "ARBITRATION AND CLASS ACTION WAIVER" was directly linked to the Arbitration and Class Action waiver section of the terms. Atkinson Decl. ¶ 6; Ex. A at 1. The "Arbitration and Class Waiver" section of the November 2018 TOU begins:

> PLEASE READ THIS SECTION CAREFULLY. IT AFFECTS YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT. You and Thumbtack agree that these Terms affect interstate commerce and that the Federal Arbitration Act governs the interpretation and enforcement of these arbitration provisions.

*Id.* at 10-11 (emphasis in original). The November 2018 TOU continues:

> This Section is intended to be interpreted broadly and governs any and all disputes between us, including but not limited to claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; claims that arose before this Agreement or any prior

6

agreement (including, but not limited to, claims related to advertising); and claims that may arise after the termination of this Agreement. The only disputes excluded from this broad prohibition are the litigation of certain intellectual property and small court claims, as provided below.

*Id.* at 11.

The November 2018 TOU continues:

*Binding Arbitration*: If the parties do not reach an agreed-upon solution within a period of thirty (30) days from the time informal dispute resolution is initiated under the Initial Dispute Resolution provision above, then either party may initiate binding arbitration as the sole means to resolve claims, subject to the terms set forth below. Specifically, all claims arising out of or relating to these Terms or previous versions of these Terms (including the Terms' or Privacy Policy's formation, performance, and breach), the parties' relationship with each other, and/or your use of the Platform shall be finally settled by binding arbitration, as described below.

*Id.* at 11 (italics in original).

The November 2018 TOU then set forth other provisions relating to arbitration. Relevant here, they state: "The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms or the Privacy Policy including but not limited to…whether a claim is subject to arbitration…" *Id.* at 11.

As set forth in the agreement, members (including Pros) had "the right to opt out and not be bound by the arbitration and class action waiver provisions set forth above." *Id.* at 12. Members who wished to opt out had to provide "written notice of

7

[the member's] decision to opt out to opt-out@thumbtack.com with the subject line, "ARBITRATION AND CLASS ACTION WAIVER OPT-OUT" within 30 days of the later of (i) the Effective Date of the Terms, or (ii) the member's first use of Thumbtack. *Id.* Members who chose not to opt out "shall be bound to arbitrate disputes in accordance with the terms of those paragraphs." *Id.* at 12. Plaintiff did not opt out of the arbitration and class waiver provision. Atkinson Decl. ¶ 9.

Finally, the November 2018 TOU also include a "continuing use" provision (under "MODIFICATIONS"), which describes how users will be notified of changes to the terms, when any changes become effective, and that if users continue to use the Thumbtack platform after a 30-day notice period they will be deemed to have consented to any such changes. Ex. A at 1.

Pursuant to the continuing use provisions in the November 2018 TOU, Plaintiff is also bound[5] by the Terms of Use that govern this the November 2022 Terms of Use ("November 2022 TOU"). *See* November 2022 Terms of Use, Ex. B. On or about October 6, 2022, Thumbtack sent an email to all users—including Plaintiff—regarding new Terms of Use for the Thumbtack platform. Atkinson Decl. ¶ 11. The email stated that use of the platform past November 6, 2022 would constitute acceptance of the November 2022 TOU. *Id.* Plaintiff continued to use the Thumbtack platform past

---

[5] Between the November 2018 TOU and November 2022 TOU, there was another iteration of the Terms of Use promulgated in September 2020. Plaintiff agreed to that, as well, through the continuing use provisions. Atkinson Decl. ¶ 15. For all purposes relevant to arbitration, the September 2020 TOU shares the characteristics of both the 2018 and 2022 versions discussed herein. For clarity, however, Defendant does not discuss it at length, but instead states that all arguments regarding the November 2022 TOU's binding effect on Plaintiff apply with equal force to the September 2020 TOU.

November 6, 2022, and did not opt-out of the November 2022 TOU arbitration agreement. *Id.* ¶ 14. As such, he was bound by the November 2022 TOU, including the accompanying arbitration agreement. Having agreed to arbitration in the November 2018 TOU, Atkinson Decl. ¶¶ 8, 9, and by continuing to use Thumbtack after November 6, 2022, Atkinson Decl. ¶ 14, Plaintiff's continued use of Thumbtack's platform constituted assent to the November 2022 TOU.[6]

The November 2022 TOU shares many provisions with the November 2018 TOU. The parallel provisions between 2018 and 2022 included: (i) the all-caps, bolded, and hyperlinked language informing users that the TOU include an arbitration and class waiver section (Ex. A at 1 and Ex. B at 1); (ii) a binding Arbitration and Class Waiver section that requires Thumbtack and its users to arbitrate all disputes except for small claims and intellectual property rights (Ex. A at 10-11 and Ex. B at 24); (iii) a clear and unmistakable delegation of all questions regarding arbitrability to the arbitrator (Ex. A at 11 and Ex. B at 25); and (iv) the 30-day right to opt out of the arbitration agreement. (Ex. A at 12 and Ex. B at 26).

To date, Littlejohn has never opted out of a Thumbtack arbitration agreement. Atkinson Decl. ¶ 16.

---

[6] Thumbtack's Terms of Use also updated on June 9, 2025. Atkinson Decl., ¶ 15. As Plaintiff filed his lawsuit on June 3, 2025, Thumbtack's position is that the question of arbitration must be decided pursuant to the Terms of Use in effect at the time of his alleged injury. Plaintiff does not allege a specific date, referencing as far back as 2012. *See* Compl. ¶ 5. The specific TOU, however, changes little, as each version since November 2018 has included an arbitration agreement that is in all material ways identical to the arbitration agreements referenced herein.

### III.    LEGAL STANDARD

Under the FAA, a court's role with respect to a motion to compel arbitration is generally limited to determining two threshold issues: (1) whether a valid agreement to arbitrate exists between the parties; and (2) if so, whether the agreement encompasses the dispute at issue. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002); *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022) ("Before enforcing an arbitration agreement, the court should ensure that the agreement was formed and that it applies to the dispute at hand"); *Maldonado v. Mattress Firm, Inc.*, 2013 WL 1760272, at *2 (M.D. Fla. Apr. 24, 2013) (Courts have an "extremely limited" role when evaluating motions to compel arbitration, and focus on threshold question); *Real Digital Media, LLC v. Bell Microproducts, Inc.*, 2009 WL 10670943, at *2 (M.D. Fla. May 1, 2009) (same). Doubts regarding the proper interpretation of an arbitration agreement "should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Maldonado*, 2013 WL 1760272, at *2.

The FAA is applicable to interstate commerce.  The "broad interstate requirement is satisfied" where the parties' agreement stipulates that the agreement involves interstate commerce, and where the transaction involves interstate commerce. *Jenkins v. First Am. Cash Advance of Georgia*, LLC, 400 F.3d 868, 874 (11th Cir. 2005).

The FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *Steines v. Westgate Palace, L.L.C.*, 113 F.4th 1335, 1342 (11th Cir. 2024) (same); *Attix*, 35 F.4th at 1294 (same).

The FAA requires a court to stay, rather than dismiss, a matter when compelling arbitration upon the request of a party. 9 U.S.C. § 3; *Smith v. Spizziri*, 601 U.S. 472, 474 (2024); *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).

## IV.    ARGUMENT

This case involves interstate commerce. Under the November 2018 TOU and November 2022 TOU, Thumbtack and Plaintiff "agree that these Terms affect interstate commerce and that the Federal Arbitration Act governs the interpretation and enforcement of these arbitration provisions." *See* Ex. A at 11; Ex. B at 24. The parties in this case, Thumbtack and Littlejohn, are from different states. Compl. ¶¶ 1, 2. Thumbtack's business is based in California. *Id.* ¶ 2. Littlejohn's is based in Florida. *Id.* ¶ 1. Thus, like in *Jenkins*, the instant dispute involves a stipulation that the transaction is interstate commerce and actual interstate commerce. *See* 400 F.3d at 874.

The Arbitration and Class Waiver section in the November 2018 TOU is conspicuous, and Plaintiff was required to affirmatively manifest (and did manifest) his assent to the November 2018 TOU before utilizing Thumbtack's products and services. Atkinson Decl. ¶ 9. Pursuant to the continuing use provision, Thumbtack

11

notified Plaintiff of the November 2022 TOU going into effect, and that notice included a conspicuous reference / hyperlink to the November 2022 TOU, with its Arbitration and Class Waiver provision.  Atkinson Decl., ¶ 12-13.  He continued to use the site after November 6, 2022.  Atkinson Decl. ¶ 14.  He has not opted out of the Arbitration and Class Waiver provision.  Atkinson Decl. ¶¶ 14, 16.  Accordingly, the Arbitration and Class Waiver provision applies to all of the claims alleged by Plaintiff, and he must bring his claims in arbitration.

Given the breadth and clarity of the arbitration delegation, *see* Ex. A at 11; Ex. B at 24, all questions beyond contract formation should go to the arbitrator, and these proceedings must be stayed pending the outcome of such arbitration.

## A.    Thumbtack's Terms of Use, Arbitration Clause and Class Action Waiver are Enforceable as a Matter of Law.

The sole issue before this Court is whether the terms of the arbitration clause are enforceable.  Under established law in this Circuit, the Court's role is limited to determining (1) whether a valid agreement to arbitrate exists between the parties; and (2) if so, whether the agreement encompasses the dispute at issue. *See Howsam*, 537 U.S. at 83–84; *Attix*, 35 F.4th at 1294. "[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

12

The fact that in *Turbin*, another federal district court has enforced this specific Arbitration Provision should also carry significant weight.  *See also Aquino v. City of Naples*, No. 2:25-CV-00460-JLB-NPM, 2025 WL 1568152, at *2 (M.D. Fla. June 3, 2025)(in the context of first to file rule, holding that "federal courts have long recognized that the principle of comity requires federal district courts — courts of coordinate jurisdiction and equal rank — to exercise care to avoid interference with each other's affairs.")  Failure to enforce the Arbitration Provision in this case would, at the least, sow confusion since the same Arbitration Provision has been enforced in similar circumstances.

## 1.    Plaintiff Entered into a Valid Agreement to Arbitrate "All Claims."

The FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.  *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (quotation omitted); *see also* 9 U.S.C. §§ 2-4. Courts must apply ordinary state-law principles in determining whether to enforce an agreement to arbitrate.  *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). Here, Plaintiff entered into a valid arbitration agreement under California law, which is the governing law of the contract, Ex. A at 12; Ex. B at 27-28, when he affirmatively consented to the applicable November 2018 TOU on sign-up, and continued to use the November 2022 TOU after November 6, 2022.  Atkinson Decl. ¶¶ 9, 14.

Plaintiff affirmatively assented to be bound by the November 2018 TOU. Atkinson Decl. ¶ 9.  As set forth above, when Plaintiff created his account, he was

presented with an uncluttered Sign-Up Page that clearly indicated that by clicking the filled-in blue button he, "agree[d] to the Terms of Use and Privacy Policy." *See* Figure 1; Ex. C. The blue text and hyperlinked phrase "Terms of Use," went directly to the November 2018 TOU themselves, which, in turn, highlighted the Arbitration and Class Wavier provision with headlines and hyperlinks directly to that section.

The Thumbtack November 2018 TOU is a standard sign-in wrap agreement and enforceable in this Circuit. *See Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1230 (S.D. Fla. 2020). "Sign-in wraps are agreements where a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service." *Id.* (internal citations omitted). *See also Hanson v. Experian Info. Sols., Inc.*, 2024 WL 3509482, at *2 (N.D. Ga. July 22, 2024) (explaining that sign-in wrap is agreement in which a user signs up to use an internet service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service, but does not require clicking on that separate agreement.)

The *Babcock* case is similar to this case. In *Babcock*, the Southern District of Florida enforced an arbitration agreement presented via "blue boldface hyperlink to the User Agreement's terms (where the user could read the full Arbitration Provision), combined with the unambiguous warning" that clicking the action button constitutes acceptance of the terms. 454 F. Supp. 3d at 1231. The defendant in *Babcock* met its burden to compel arbitration where, after presenting hyperlinks to the terms and conditions to users on an uncluttered screen, those terms  contained an expansive

explanation of mandatory arbitration. *Id.* at 1232-1233. Here, Plaintiff was also presented with a hyperlink to the November 2018 TOU in blue text, and the terms themselves clearly explain the arbitration process. Figure 1; Ex A at 10-12.

The *Babcock* court found that that plaintiff manifested assent to the terms and conditions by tapping the action button directly underneath the warning that it would constitute acceptance of terms. 454 F. Supp. 3d at 1234. In *Babcock*, the action button was green and followed the sentence "By tapping 'I Agree', I confirm that I am at least 18 years old or other legal age of majority, and that I have read and agreed to [the] User Agreement . . ." *Id.* at 1231. In the instant case, Plaintiff manifested his assent by clicking the filled-in blue button under the sentence "By clicking Sign-up, I agree to the Terms of Use and Privacy Policy." *See* Figure 1; Ex. C.

Plaintiff's continued use of Thumbtack's platform after November 6, 2022 constituted assent to the November 2022 TOU. Parties can demonstrate assent by continuing to accept benefits of a contract. *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) (enforcing arbitration provision where parties' acceptance was demonstrated by continuing to accept employment under the contract); *Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1283 (M.D. Fla. 2025) (enforcing arbitration agreement where assent to new terms of use in internet contract demonstrated by continued use). All Thumbtack users received an e-mail on or about October 6, 2022, with hyper links to the November 2022 TOU. Atkinson Decl. ¶ 11-12. The e-mail informed them that the Thumbtack Terms of Use were changing, and that continued use of the platform past November 6, 2022 would be taken as assent to the new terms

15

of use.   Atkinson Decl. ¶¶ 11-14.   Users who did not want to arbitrate disputes in the new terms of use had 30 days to opt out.   Ex. B at 26-27.   Like *Caley*, Plaintiff did not have to accept the benefits of the new contract with Thumbtack by using the platform. Moreover, Plaintiff could have continued to use Thumbtack's platform and also opted out of arbitration as a dispute resolution mechanism.   But he did not opt out.

The arguments on why the November 2018 TOU require arbitration, apply with equal force to the November 2022 TOU.   Plaintiff assented to be bound by mandatory arbitration clauses in multiple versions of the Thumbtack Terms of Use.   He first did so through the November 2018 TOU when he clicked "Sign up" as they were conspicuously linked on the Sign-Up Page.   He reaffirmed his commitment to arbitration through the November 2022 TOU when he continued to use Thumbtack after  receiving the October 6, 2022 e-mail, in which the November 2022 TOU were conspicuously.   Thus, the Court must compel arbitration of his claims.

### 2.   The Agreement to Arbitrate Covers this Dispute.

The Arbitration Provisions in the November 2018 TOU and the November 2022 TOU are, in most respects, identical. They both encompass "all claims arising out of or relating to these Terms or previous versions of these Terms (including the Terms' or Privacy Policy's formation, performance, and breach), the parties' relationship with each other, and/or your use of the Platform . . . ."  Ex. A at 11; Ex. B at 24-25.

Accordingly, Plaintiff agreed to dispute any claims "arising out of or relating to" the Terms, the parties' relationship, and/or use of the platform. In the Eleventh

Circuit, courts enforce broad arbitration provisions where the parties show "a clear intent to cover more than just those matters set forth in the contract." *Bd. of Trs. of City of Delray Beach Police & Firefighters Ret. Sys. v. Citigroup Glob. Markets, Inc.*, 622 F.3d 1335, 1343 (11th Cir. 2010) (internal citations omitted).

On their face, Plaintiff's claims clearly "aris[e] out of or relat[e] to…the parties' relationship with each other, and/or [his] use of [Thumbtack]." For Count One, without Plaintiff using Thumbtack's platform to promote his business, there would be no relationship on which to base his allegations of damages (presumably lost revenue). For Counts Two and Three, if Plaintiff were not advertising on Thumbtack, he would not have any allegedly unfair competition from allegedly unlicensed contractors "advertised alongside and in competition with Plaintiffs [*sic*] licensed business." *See* Compl. ¶¶ 6, 13, 17. Thus, he necessarily has brought claims that are covered by the agreement to arbitrate and this Court must compel arbitration.

### B. The Parties Agreed that the Arbitrator Has "Exclusive Authority" to Decide "Whether a Claim is Subject to Arbitration."

All threshold questions beyond contract formation should be decided by the arbitrator. When a district court finds that a valid arbitration agreement exists, it must then determine whether the parties "manifested a clear and unmistakable intent to arbitrate gateway issues" such as arbitrability, enforceability, or scope of an arbitration agreement. *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017). Agreements to arbitrate arbitrability are just as valid as any other question delegated to an arbitrator. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

17

The November 2018 TOU and the November 2022 TOU provide clear and unmistakable evidence that the parties delegated the issue of arbitrability to the arbitrator. As shown above, the November 2018 and November 2022 TOU explicitly provide that the arbitrator determines all threshold issues, delegating such authority to "The arbitrator, and not any . . court." Ex. A at 11; Ex. B at 25. When an agreement clearly and unmistakably delegates the issue of arbitrability to the arbitrator, the court must compel arbitration and stay the underlying action. *Rent-A-Ctr., W., Inc.*, 561 U.S. at 68-69 ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability'…).

Because all applicable Terms of Use (that is, the November 2018 and November 2022 TOU and any other iterations in between) provide clear and unmistakable evidence that the parties agreed for an arbitrator to have "exclusive authority" to decide "whether a claim is subject to arbitration," this court must compel arbitration and stay these proceedings.

### C.    This Matter Should Be Stayed Pending the Outcome of Arbitration.

When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceedings. *See Suarez-Valdez v. Shearson Lehman/Am. Exp., Inc.,* 858 F.2d 648, 649 (11th Cir. 1988); 9 U.S.C. § 3. In the event that this Court grants Thumbtack's motion

to compel arbitration, Thumbtack respectfully requests that this Court stay its proceedings pending the outcome of the parties' arbitration.

## V.    CONCLUSION

WHEREFORE, based upon the foregoing, Thumbtack respectfully requests that the Court enter an Order (i) requiring Plaintiff to arbitrate all of his claims in accordance with the Terms of Use; (ii) staying the proceedings pending such arbitration; and (iii) granting Thumbtack any such other and further relief the Court deems just and proper under the circumstances.

Dated: January 6, 2026

Respectfully submitted,

*/s/ Johanes Maliza*

Johanes Maliza (admitted *pro hac vice*)
Benesch, Friedlander, Coplan & Aronoff LLP
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  (216) 363-1503
            jmaliza@beneschlaw.com

*Attorneys for Defendant Thumbtack, Inc.*

19

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 6th day of January, 2026, I electronically transmitted the

attached document to the Clerk's Office using the CM/ECF system for filing and

served the same on the following via Certified Mail:

Dwayne Curtis Littlejohn
8802 Corporate Square Court, Suite 203
Jacksonville, FL 32216

/s/ Johanes Maliza
*One of the Attorneys for Defendant*
*Thumbtack Inc.*

20

## <u>LOCAL RULE 3.01(G) CERTIFICATION</u>

I hereby certify that I have repeatedly attempted to confer with Plaintiff Dwayne Curtis Littlejohn regarding the relief requested in this Motion. To date, Littlejohn has been unavailable to confer. Below is an overview of all attempts I have made to confer with Littlejohn:

1.  On September 23, 2025, I contacted Littlejohn via telephone and e-mail and asked whether he consented to Thumbtack's Motion to Compel Arbitration and Stay Proceedings and any reasons for opposition. He did not respond. *See* Dkt. 19.[7]

2.  On September 24, 2025, I contacted Littlejohn via telephone and e-mail and asked whether he consented to Thumbtack's Motion to Compel Arbitration and Stay Proceedings and any reasons for opposition. He did not respond. *See* Dkt. 19.

3.  On September 25, 2025, I contacted Littlejohn via e-mail and telephone and again asked whether he consented to Thumbtack's Motion to Compel Arbitration and Stay Proceedings and any reasons for opposition. He did not respond. *See* Dkt. 19.

4.  On December 11, 2025, I contacted Littlejohn via email and asked whether he consented to Thumbtack's Motion to Compel Arbitration and Stay Proceedings. On December 12, Littlejohn stated that he was willing to meet and discuss further. On December 15, I sent Littlejohn a list of all issues set forth in the Motion to Compel Arbitration and asked for his availability to meet and confer. He did not respond.

5.  On December 21, Littlejohn contacted me via email and asked whether Thumbtack opposed a Motion to Remand. That same day, I confirmed Thumbtack's opposition to the motion to remand and again asked for his availability to discuss the Motion to Compel Arbitration. He did not respond.

---

[7] Thumbtack was unable to confer with Littlejohn prior to filing its first Motion to Compel Arbitration. On September 25, Thumbtack filed supplemental notice pursuant to Local Rule 3.01(g) that outlined all efforts made to contact Littlejohn regarding the motion to compel arbitration. *See* Dkt. 19.

6.     On December 23, I contacted Littlejohn via telephone to discuss Thumbtack's Motion to Compel Arbitration and Stay Proceedings. He did not answer.

7.     On December 30, I contacted Littlejohn via e-mail to discuss Thumbtack's Motion to Compel Arbitration and Stay Proceedings. He did not respond.

8.     On January 5, 2026, I contacted Littlejohn via phone and e-mail to discuss Thumbtack's Motion to Compel Arbitration and Stay Proceedings. He did not respond to the e-mail or answer the telephone.

Based on Littlejohn's unavailability, the parties have been unable to resolve any part of Thumbtack's Motion. I will continue to diligently attempt to contact Littlejohn for three days following this motion and timely file a supplement in accordance with Local Rule 3.01(g)(3).

_/s/ Johanes C. Maliza_

Attorney for Defendant Thumbtack Inc.